FRED W. JONES, Judge.
In July, 1972, J. W. Moore and his nephew, James Moore, purchased new homes across the street from each other in a subdivision near Coushatta, Louisiana, under the FHA “235” loan assistance program. In connection with the financing of his purchase each vendee executed a mortgage in favor of Bridges Loan & Investment Company, Inc. (“Bridges”), Jackson, Mississippi. In turn, Bridges placed the loans in a GNMA mortgage pool. In October, 1972, the J. W. Moore loan was sold to The Lomas & Nettleton Company (“Lomas & Nettle-ton”), Dallas, Texas, and the James Moore loan was sold to First Fidelity Mortgage Company (“First Fidelity”), Monroe, Louisiana.
Through an unusual concatenation of circumstances both J. W. Moore and James Moore received loan packets from First Fidelity and began making their monthly loan payments to that institution. Since J. W. Moore was not paying Lomas & Nettleton, the holder of his mortgage note, this borrower and his wife were sued by Lomas & Nettleton on April 30, 1974 to foreclose on their mortgaged property by executory process.[1] The defendants answered, reconvened for damages, and filed a third party demand against Bridges[2] and First Fidelity for damages. First Fidelity pled the alleged contributory negligence of J. W. Moore as a defense.
Trial on the merits was had on September 19,1977 and judgment rendered on October 12, 1977 in favor of the third party plaintiffs against First Fidelity awarding general damages of $5,000.00 and attorney fees of $5,000.00. This judgment was signed on March 20,1978. On the same date a second judgment was signed, pursuant to a joint stipulation of the parties and specifying that it did not affect the prior judgment, ordering First Fidelity to remit to third party plaintiffs all payments erroneously received and giving third party plaintiffs ten days thereafter in which to bring up-to-date their loan with Lomas & Nettleton, in default of which the latter would be entitled to judgment against its mortgage debtors as prayed for in the original petition.
On August 20,1979, after the granting of a new trial for the restricted purpose of receiving specified evidence and hearing reargument, another judgment was rendered and signed setting aside the judgment “entered” on March 20, 1978; ordering First Fidelity to refund to third party plaintiffs a specified sum; rendering judgment in favor of Lomas & Nettleton against the original defendants for the amount due on their delinquent loan and ordering satisfaction thereof by seizure and sale of the mortgaged property, but staying execution for ten days to give the defendants an opportunity to make current their loan payments to plaintiff; and rendering judgment in favor of third party plaintiffs against First Fidelity for $5,000.00 in general damages.[3]
First Fidelity has appealed from the judgment against it on the third party de *884 mand. Appellant has filed in this court an exception of no cause of action, contending that the third party demand neither states a cause of action for damages for defamation nor for negligent infliction of mental distress and embarrassment.
It is obvious that the confusion which preceded and precipitated this litigation arose because of the similarity in the names of the two borrowers who happened to close their loans at the same time, executing mortgages on lots in the same subdivision.
From the record it appears that the snarl began when an employee of First Fidelity, receiving loan papers on James (NMI) Moore, noticed that a plat of survey in the loan packet referred to a “James W. Moore” and set up the loan file in the name of “J. W. Moore.”[4] Thereafter, payments received from either J. W. Moore or James Moore were routinely credited to the one loan account. Since the two were understandably paying more on the loan than the payment schedule required, First Fidelity wrote James Moore on at least three occasions [5] to inform him that he was prepaying his loan. Some of these payments were even remitted to that party.
It is also significant, and a factor in the muddle, that both J. W. Moore and James Moore received their mail “General Delivery, Coushatta, La.” for quite sometime after their loan closings.[6]
Evidence received at the trial established that First Fidelity was not aware of the loan mix-up until it was contacted by an attorney acting on behalf of J. W. Moore after the suit was filed by Lomas & Nettle-ton in 1974. Prior to that time J. W. Moore had made fifteen payments, for a total of $955.08, on the James Moore loan. This amount was refunded to him by First Fidelity. Subsequently, J. W. Moore mailed 44 money orders to First Fidelity, all of which were eventually returned.
It is in this factual context that the legal issues will be addressed.
EXCEPTION OF NO CAUSE OF ACTION
Contrary to the appellant’s argument, the third party demand is not based upon an action for defamation but, in essence, based upon well-pled allegations of fact, seeks damages for humiliation and embarrassment. There is no question but that damages of this nature are recoverable. See Stone, Louisiana Civil Law Treatise, Tort Doctrine (1977), § 14, p. 23. Also Edwards v. Butler, 203 So.2d 90 (La.App.2d Cir. 1967). Therefore, the exception of no cause of action is overruled.
LIABILITY OF FIRST FIDELITY
The third party demand is an action in tort under Louisiana Civil Code Article 2315.[7] An analysis of First Fidelity’s liability to J. W. Moore requires that certain questions be posed and answered in logical progression.
First, did First Fidelity have a duty to J. W. Moore and, if so, when did it arise? Obviously the duty was to return monies which were not owed by J. W. Moore to First Fidelity, and that duty arose when the payments were received.
Next, was that duty violated? Here again, there is no question but that First Fidelity did not in fact return any payments until after suit was filed against J. W. Moore by Lomas & Nettleton. Clearly, the duty was violated.
Was First Fidelity negligent in the violation of that duty? Based upon an examination of the record it is concluded that *885 First Fidelity was negligent in the following respects:
(1) Setting up a loan file in the name of “J. W. Moore” when the loan papers from Bridges Investment Company showed the borrower’s name as “James Moore.”
(2) Failing to make an investigation, to clear up the confusion, when the James Moore loan was being regularly prepaid and James repeatedly denied prepaying.
(3) Failing to investigate the reason for the obvious disparity in the payments made by J. W. Moore and those due by James Moore.
What “injury” was sustained by J. W. Moore as a result of First Fidelity’s negligence? The injury sustained was the embarrassment and humiliation that naturally flows from being sued on an indebtedness that has actually been paid, even though to the wrong party.
Was J. W. Moore contributorily negligent prior to the filing of the suit against him by Lomas & Nettleton? According to the record, this third party plaintiff had an eighth grade education and no experience in financial matters. There was no evidence that he should have been alerted to the fact that his payments were being sent to the wrong mortgage holder. In fact, the mailing to one of loan cards with his name at the top would normally lead the recipient to believe that he was sending his payments to the proper party. Therefore, J. W. Moore was not guilty of contributory negligence.
It follows from the above that J. W. Moore is entitled to recover damages from First Fidelity for his humiliation and embarrassment because of being sued by Lo-mas & Nettleton.[8]
QUANTUM
The trial judge awarded third party plaintiffs the sum of $5,000 in general damages “to their reputation, humiliation and embarrassment. ’ ’
It is now well established that before an appellate court may change an award made by a trial court the record must clearly reveal that the trier of fact abused his discretion in making the award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976); Reck v. Stevens, 373 So.2d 498 (La. 1979).
The overwhelming majority of Louisiana appellate cases awarding damages for humiliation and embarrassment involve actions for wrongful seizure of property. Representative of those cases and typical of the awards are:
Edwards v. Butler, 203 So.2d 90 (La. App.2d Cir. 1967), $200 damages for humiliation and embarrassment for unlawful repossession of cash register.
Moses v. American Sec. Bank of Ville Platte, 222 So.2d 899 (La.App.3rd Cir. 1969), $200 general damages for wrongful seizure of school bus.
Dubois v. Travelers, 276 So.2d 814 (La. App.3rd Cir. 1973), $750 to plaintiff who for a ten month period beginning with the seizure did not know whether he would retain his home.
Samaniego v. Horseless Carriage, Inc., 350 So.2d 193 (La.App.2d Cir. 1977), $100 nominal damages for wrongful seizure of an automobile.
Phillips v. Great So. Mortgage & Loan Corp., 350 So.2d 1279 (La.App.3rd Cir. 1977), $750 for constructive seizure of plaintiff’s home.
Mid-State Homes v. Bice, 361 So.2d 275 (La.App.1st Cir. 1978), $1,000 damages for wrongful seizure.
It is apparent from a survey of these cases that the maximum award was $1,000.00. Furthermore, the actions of the tortfeasors appeared to be more objectiona *886 ble and flagrant than those of First Fidelity.
Evidence offered in this case to prove damages consisted of the following testimony of J. W. Moore:
Q. Have you ever been foreclosed on before?
A. No, sir.
Q. Were your neighbors aware of all this going on?
A. Yes, sir.
Q. Does it bother you?
A. Yes, sir, it sure does.
Mrs. Moore stated that she had “really been worried about it.”
It is recognized that suit instituted against one for indebtedness that has been paid will naturally cause a certain amount of embarrassment, particularly in a rural community where information of that nature lends itself to speedy and widespread dissemination. However, there was no evidence that the third party plaintiffs suffered undue humiliation and embarrassment. In fact, they remained in their residence for some five years after the suit was filed.
For these reasons, we conclude that the record clearly reveals that the trial judge abused his wide discretion in fixing damages and that the award is excessive. Further, after considering all of the circumstances of the case, an award of- $1,000.00 is deemed adequate to compensate third party plaintiffs for their humiliation and embarrassment occasioned by the Lomas & Net-tleton foreclosure suit.
Accordingly, the judgment of the trial court is amended by reducing the award in favor of third party plaintiffs and against third party defendant from $5,000.00 to $1,000.00, with legal interest from judicial demand until paid, and, as amended, is affirmed. Appellant shall pay the costs of the district court while the costs of appeal shall be paid by appellees.

. This was converted to ordinary process by amended petition filed on June 5, 1975.

. The action against Bridges was subsequently dismissed.

.On February 4, 1977, First Fidelity filed suit against James Moore to foreclose on his property by executory process. For trial purposes this was consolidated with the Lomas & Nettle-ton suit against J. W. Moore. However, the litigation involving James Moore has been settled and is not involved in this appeal.

. At that time First Fidelity only used initials and not first names on its loan files.

. November 12, 1973; November 4, 1974; June 6, 1975.

. Although the tax information sheets on both borrowers prepared in connection with their loan closings showed numbered mail boxes on Coushatta rural mail routes, both received their mail by general delivery when the first loan papers were mailed.

.“Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.”

. It should be noted that J. W. is not receiving damages for loss of his home. The record does not show that this actually occurred, although a sheriffs sale is alluded to in the briefs, apparently having taken place after the August 20, 1979 judgment. Be that as it may, J. W. Moore had ample opportunity after the suit was filed in 1974 to use the refunds from First Fidelity to make his loan current with Lomas & Nettleton.